# CALEDONIA COUNTY.

## MARCH TERM, 1837.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    "   JACOB COLLAMER.    } *Assistant Justices.*
    "   ISAAC F. REDFIELD.  }

Caledonia,
*March,*
1837.

## JOHN CLARK *v.* GAMALIEL WASHBURN.

A person regularly authorized to serve a writ, by a justice of the peace, may serve the same, in any county, to the officers of which it may by law be directed, though it is not, in fact, directed to such officers.

If property be attached by a deputized person, to charge such property in execution, the execution must be delivered to the same person, within thirty days after the judgment, or, if delivered to another officer, it must be demanded or taken by him, within thirty days, or the attachment is dissolved.

This was an action of trover for one pair of horses. On the trial, the plaintiff proved that on the 10th day of Nov. 1835, a writ was sued out by McLean & Wallace against Sidney Patterson, signed by a justice of the peace, directed to the sheriff of Washington county, his deputy, &c. This writ the plaintiff was, by said justice, duly authorized to serve, by an indorsement thereon, agreeably to the statute. On said 10th day of Nov. 1835, the plaintiff served said writ, at Cabot, in the county of Caledonia, by attaching the horses now in question ; and he put

said horses into the possession of another person, for safe keeping. This writ was duly returned to the justice, and judgment thereon was rendered against said Patterson, by said justice, on the 28th day of Nov. 1835, for fifty six dollars, and four cents, damages and cost. Execution of that date was taken out on said judgment, and delivered to a legal officer, who took no possession of said property, but, on the 15th day of December, 1835, advertised said horses to be sold on the 29th day of Dec. and, on that day, he went to the person, with whom the plaintiff had deposited them, and found they were gone. They were never demanded of the plaintiff.

The defendant showed that a writ was sued out by Hall, Dickinson & Co., against the said Patterson, on the 10th day of November, 1835, signed by a justice of the peace, directed to the sheriff of Washington or Caledonia county, or either of their deputies, and which writ the defendant was, by said justice, duly authorized to serve. Subsequent to the plaintiff's attachment, but on the same day, the defendant, on this writ, attached these horses, but did not remove them from the custody of the depositary. Judgment was duly rendered by the justice on this writ, against Patterson, on the 21st day of Nov. 1835, and execution issued of that date, which was then delivered to the defendant to levy and collect, which he was legally authorized to do. The defendant, on the 10th day of Dec. 1835, levied upon these horses, and advertised the same for sale, and on the 24th day of Dec. 1835, sold the same in due form of law, on said execution.

The court charged the jury upon the foregoing facts, that the plaintiff was entitled to recover the amount of the execution, issued on the judgment rendered on the attachment made by him, as it was admitted the horses exceeded that amount in value. To which decision the defendant excepted, and verdict and judgment being rendered for the plaintiff, the case passed to this court.

*Eaton and Peck, for defendant.*

I. The plaintiff had no authority to make the attachment. The writ was directed to the sheriff of Washington county, and it is perfectly clear that he could not have seized the property in Caledonia county, and we insist that the plaintiff's authority was not more extensive than the sheriff's. The statute provides that, if it shall be made to appear to a justice, that a writ of summons or attachment, &c. by him granted, may fail of service, for the

want of a proper officer, seasonably to be had; he may deputize any suitable person to serve such process—" and the person so authorized shall have all the powers of the sheriff, *to whom such writ may be directed*, in the service and return of such writ." 1 Comp. Stat. 127. Sec. 11. The plaintiff's power was derived solely from this provision, and the only fair and obvious construction of the statute is, that his authority was limited by that of the sheriff. The word *may*, as used in this section, is the same as the word *shall. R. & R. v. Barlow*, 2 Salk., 609. So that the statute must be construed as if it read " that the person so authorized shall have all the powers of the sheriff, to whom such writ shall be directed." The 11 sec. provides, that if it shall be made to appear to the justice, issuing the writ, that it may fail of service for the want of an officer seasonably to be had, an indifferent person may be deputized. What officer is here intended ? Most clearly the officer, to whom the writ is directed. It can be no other. In the case under discussion, *the writ was directed to the sheriff*, &c. *of Washington* county. The debtor resided there, and *there* the writ was to be served. Can it reasonably be supposed that the justice, issuing the writ, went into any inquiry, whether that writ would fail of service in this ( Caledonia) county, for the want of an officer, when no one could suppose it would be served here ? And does it follow, because the justice was satisfied there was no officer who could seasonably be obtained to serve the writ in Washington County, that he was also satisfied that none could be seasonably found to serve it here ? If the position assumed by the plaintiff's counsel be correct, then the plaintiff might have served the writ in Bennington, or any other county in the State. This would be giving to the statute a latitude of construction, which the legislature could never have intended. Had they intended to confer this extensive authority on a person thus deputized, the statute would have been couched in different language.

II. The *lien* was lost by the officer, who held the execution for collection, neglecting to take possession of the property, or to demand it within thirty days. Merely advertising the property for sale, was not seizing it in execution. A levy can be made only by some act, which, in legal contemplation, is equivalent to the actual possession and custody of the property. *Fitch* v.

*Rogers,* 7 Vt. Rep. 403. *Lane et al.* v. *Jackson,* 5 Mass. Rep. 157. *Turner* v. *Austin,* 16 id. 181. *Denny* v. *Warner,* id. 420. *Gordon* v. *Jenny,* id. 465. *Bukham* v. *Lansing,* 3 Wendell, 446. *Hollister* v. *Goodale,* 8 Conn. Rep. 332. Whenever an officer has attached property, and holds it to respond the judgment, if the execution come into the hands of another officer, a demand must be made of the attaching officer, within the thirty days, or the property be actually taken in execution within that time; otherwise, the *lien* is gone. When the execution goes into the hands of the officer making the attachment, the rule is different. *Enos* v. *Brown,* 1 D. Chip. Rep. 280. *Scott* v. *Crane,* 1 Conn. Rep. 255. *Cole* v. *Wooster,* 2 id. 203. *Gates* v. *Bushnell,* 9 id. 530.

*J. Mattocks, for plaintiff.*

1. It is objected that Clark, who was duly deputized to serve the justice writ, had no authority, because the writ was directed to the sheriff of *Washington* county, and the writ was served by the deputized person in *Caledonia.* The 11th sec. of the justice act, p. 127, is relied on by the plaintiff, which authorizes a justice " to deputize any suitable person," and the defendant relies on the following clause in the same section, as limiting his authority.—" And the person so authorized shall have all the power of the sheriff to whom such writ may be directed, in the service and return of such writ," and it is insisted that, as this writ was directed to the sheriff of Washington county, the deputized person had only the power of that sheriff, in the service of this writ, and, consequently, had none in Caledonia county. The obvious answer to this objection is, that the word *may,* in this passage, has not the meaning of *shall,* nor has *may be,* the meaning of *is,* and is not to be so considered, as if it read, to whom such writ *shall* be directed, or to whom such writ *is* directed. This statute was, of course, speaking of the future, and *may,* here means precisely what *might,* the preterite of *may,* would mean, speaking of the past. This writ *might* or *could* have been directed to the sheriff of Caledonia county, and any other similar writ *may* or *can,* now or to-morrow, be directed to the said sheriff, and therefore the deputized person then had the same power as the sheriff of Caledonia county, and the sheriff had all required power. There is, therefore, no impropriety of language in our construction; and the good sense is certainly with us. The person deputized

In the right margin:
Caledonia,
March,
1837.

Clark
v.
Washburn.

Caledonia, March, 1837.

Clark v. Washburn.

by the justice has no derivative authority from any sheriff; his authority is from the law, through the justice. The law intended, in particular cases, to give the deputized person the authority of any sheriff, or any proper officer. The 24th sec. of the judiciary act, says: " And every writ and process issued, as aforesaid, shall be directed to the sheriff, his deputy, or some constable in the town where the service is to be made ;" and a *late* justice act directs all justice writs to be directed " to any constable in the county." Yet it has been decided under the first act, and under the second, in *Cooper v. Ingalls*, 5 Vt. Rep. 508, that if the writ was directed to the officer who served it, that was sufficient ; and it would not only be useless, but nearly absurd, to require a writ to be delivered to an officer, who is not expected to, and does not serve it, in order to give authority to another officer, or *quasi* officer, who does. And if it be the law in this, as in some other States, that any proper officer may serve a writ within his precinct, without its being directed to him, (and it has been so intimated, if not decided,) then the defendant's construction would have the additional folly of requiring the writ to be directed to a sheriff that could have served it, without such directions, in order to empower the deputized person to serve it. Besides, if the construction be right, that no sheriff could then serve a writ, unless directed to him, still if now any sheriff can, *ex officio*, serve a writ, without its being directed to him, we may reject the words " to whom such writ may be directed," and the person authorized shall have all the power of the sheriff, which of course, will be considered the sheriff, where the service is made, and this will suffice, on the ground that the law of the land now requires no direction to the sheriff, or rather that the writ served is good without it.

II. It is objected that the lien was lost, because no demand was made of the person, who held the property. The demand, obviously, has nothing to do with this case. The suit is not against the person, with whom the property was left for safe keeping. The objection must be that " the plaintiff did not take the property on execution within 30 days." In the case of *Enos v. Brown*,1D. Chip. 280, Judge Chipman explained fully the meaning of the statute, and decided that putting the execution into the hands of the officer, who made the attachment, within 30 days, is sufficient, without any act being done by him within the 30 days ; on the ground that the delivering the execution to the

officer charges the property, the same as it would charge a prisoner, who was in jail. In our case, the execution was not delivered to the officer, who attached the property, but the property was in the custody of the law, that is, in the custody of the plaintiff's officer, who served the writ, and in the actual possession of his servant; and within the 30 days, the plaintiff delivered his execution to a proper officer, who, within the 30 days, advertised it for sale on the 29th Dec. before which day, on the 24th, the defendant sold and converted it. The advertising was of course in the common from; "taken on execution." The property was therefore, in law, taken on execution, or levied upon. The objection is only, that the officer took no actual possession of the property. Why was this formality necessary? Not to give notice of the levy. The advertising of the property did this. And for what end should he have taken actual possession, and delivered it back to the keeper? The analogy, which the judge, in the case cited, said existed between charging property and charging the body, may be carried further in this case. When the sheriff receives an execution against a man, already in prison, must he do any act more than leave the copy? Need he take the prisoner out and recommit him, or do any act except on paper? Or to make it just this case, when a new jailor finds a prisoner already in custody of the law, need he do more with another execution, than the old jailor need have done with the same execution. In *Fletcher* v. *Pratt et al.* 4 Vt. Rep. 182. the court say: "We deem it settled that if the creditor preserves his lien upon the property, as against the attaching officer, by giving out his execution within 30 days, that establishes the lien upon the same property in favor of the officer. In *Eastman* v. *Curtis*, 4 Vt. Rep. 616, the court say: "And the return of the officer, in relation to choos'ng appraisers, is conclusive upon the parties, and those claiming under them." Why does not this return of the levy stand on the same ground?

The opinion of the Court was delivered by

COLLAMER, J.—The first question arising in this case relates to the authority of the plaintiff, to attach the property. In relation to this the court are not unanimous in opinion, but a majority of the Judges, present, are of opinion that the plaintiff had legal and sufficient authority to serve the writ of attachment, as the same was served by him. The next question relates to the lien being kept and retained upon the property on the debt of

McLean and Wallace. The statute provides, (Vol. 1. p. 68. Sec. 33.) " Where the goods or chattels of any person shall be taken on *mesne process*, the same shall be holden thirty days from the time final judgment shall be rendered in said suit. And unless the plaintiff in said suit shall, within the term of thirty days from the time of rendering such judgment as aforesaid, take said property in execution, the same shall be discharged from said process, and be no further liable to answer said judgment, than though the same had not been attached." The true meaning and effect of this statute has been a frequent subject of judicial investigation, and has been very clearly, and we think, very correctly, decided. The officer, serving the attachment, is the keeper of the property, in custody of law, and, for this, the law furnishes him authority for the full term of thirty days after final judgment, and no longer. If the property is not then *taken in execution*, the officer must deliver the same to the owner, or it will be subject to his control and to the attachment and executions of all his creditors. If the execution be, within the thirty days, delivered to the same officer, who has the property, this furnishes him authority to retain it, and it is *taken in execution*. If the execution be delivered to some other officer, though done within thirty days, this, most obviously, would not put the property into his custody, and if nothing more was done, most clearly no action could be sustained against him for not *safely keeping* the property, which he never had. Therefore, it cannot be said, that by the mere giving out the execution to an officer, who never had the property, the property is *taken in execution*. The officer, who has the property, unless the demand is made of him, has no means of knowing that any execution has issued. When the thirty days has expired, the officer, holding the property, should have some clear and certain knowledge whether he may then deliver the property to the owner, or suffer his other creditors to take it, or should be able to deny them this with safety. This security cannot be furnished him but by having the execution delivered to him or unless the officer holding it shall actually take the property or demand it of the attaching officer, within the thirty days. In analogy also to the arrest of the body, this equally holds true. In that case, if the execution be seasonably delivered to the sheriff, who has the prisoner in custody, it charges the body, but if seasonably delivered to a

different officer that does not charge the body in execution, until a copy with the officer's return is also left, within the time.

In this case, the attaching officer had not used up the property nor sold it, nor delivered it to the owner, within the thirty days, and the same being, without his fault, taken on the tenth day of December, 1835, could not excuse the first attaching creditor from charging it seasonably in execution. In the case, *Enos* v. *Brown*, D. Chip. R. 280, *Chipman*, C. J., says: " So if the " attachment of personal property, on *mesne* process, was made " by the sheriff, and the plaintiff deliver his execution to the " constable, he does not thereby charge the property in execu- " tion. He must see that the execution be delivered thereon " within thirty days, or a demand be made of the sheriff to charge " him, *in case the property has been eloigned.*"

In this case, the property was taken by defendant, before the thirty days expired, but it was legally applied on the proper debt of the owner of the horses. The plaintiff is not liable to Mc Lean & Wallace, as their lien was discharged. He is not liable to Patterson, as the property has been legally applied on his debt by the defendant. Therefore, if the taking by the defendant, were, when done, a tort on the plaintiff's possession it could only enable the plaintiff to recover nominal damages. This verdict and judgment for the full value of the property must be reversed.

Judgment reversed.